# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RABBI ALEXANDER MILCHTEIN
and ESTER RIVA MILCHTEIN,

                        Plaintiffs,                    Case No. 19-CV-1834-JPS

v.

ELOISE ANDERSON, MILWAUKEE                             **ORDER**
COUNTY, ARLENE HAPPACH,
ROBIN JOSEPH, SARAH HENERY,
MARTHA STACKER, LORI
WAGNITZ, MARY PAT BOHN,
CRYSTAL REYES, NADINE
SHERMAN, JULIA KONRARDY
COMEY, CHILDREN'S HOSPITAL
AND HEALTH SYSTEM, INC., SARA
WALDSCHMIDT, JACKIE VOYKIN
STEFFES, MILWAUKEE COUNTY
DEPARTMENT OF HEALTH AND
HUMAN SERVICES, KELLY
PETHKE, MARK MERTENS, SARA
WOITEL, BELLA'S GROUP HOME,
LLC, JOHN T. CHISHOLM, and LORI
KORNBLUM,

                        Defendants.

## 1.    INTRODUCTION

On December 15, 2019, Plaintiffs Rabbi Alexander Milchtein and

Ester Riva Milchtein brought this action seeking both declaratory and

injunctive relief, as well as damages. (Docket #1).[1] The gist of Plaintiffs'

---

[1] Plaintiffs also filed a motion to restrict their complaint and the exhibits thereto. (Docket #3). The Court will grant this motion.

complaint is that Defendants violated Plaintiffs' constitutional rights when Defendants took certain actions (or inactions) regarding Plaintiffs' daughters, C.M., S.M., and D.M.

In this Order, the Court addresses four motions to dismiss, the first of which was filed by the "State Defendants" on February 14, 2020. (Docket #23). The State Defendants include Eloise Anderson ("Anderson"), the Secretary of the Department of Children and Families; Mary Pat Bohn ("Bohn"), the former Deputy Director of the Bureau of Milwaukee Child Welfare (now Milwaukee Child Protective Services or "MCPS"); John T. Chisholm ("Chisholm"), the Milwaukee County District Attorney; Julia Konrardy Comey ("Konrardy Comey"), a former Initial Assessment Worker at MCPS; Arlene Happach ("Happach"), the former director of MCPS; Sarah Henery ("Henery"), former legal counsel for MCPS; Robin Joseph ("Joseph") the Division Administrator for MCPS; Lori Kornblum ("Kornblum"), a former Assistant District Attorney for Milwaukee County; Crystal Reyes ("Reyes"), a former Initial Assessment Social Worker at MCPS; Nadine Sherman ("Sherman"), a supervisor at MCPS; Martha Stacker ("Stacker"), an Initial Assessment Supervisor at MCPS; and Lori Wagnitz ("Wagnitz"), the regional manager of MCPS. Their motion to dismiss is fully briefed. (Docket #24, #25, #31).

Another cohort of defendants, the "County Defendants," who are or were affiliated with Milwaukee County, filed a motion to dismiss on March 10, 2020. (Docket #26). The County Defendants include Milwaukee County (the "County"); the Milwaukee County Department of Health and Human Services ("DHSS"), a public entity that investigates and adjudicates claims of juvenile abuse; Mark Mertens ("Mertens"), a former administrator at DHHS's Delinquency and Court Services Division; Kelly Pethke

("Pethke"), the Deputy Administrator at DHHS's Delinquency and Court Services Division; and Sara Woitel ("Woitel"), a social worker at DHHS's Delinquency and Court Services Division. The County Defendants' motion is fully briefed. (Docket #27, #33, #39).

A third group of defendants, the "Hospital Defendants," filed a notice to join the County Defendants' motion to dismiss. (Docket #28). The Hospital Defendants include Children's Hospital and Health System, Inc., ("CHHS"), a Wisconsin corporation; Sara Waldschmidt ("Waldschmidt"), a Family Case Management Supervisor at Children's Service Society of Wisconsin ("CSSW"), which is a subunit of CHHS; and Jackie Voykin Steffes, ("Voykin Steffes"), a former CHHS employee who served as an ongoing supervisor caseworker during C.M.'s case. The Hospital Defendants' motion is fully briefed. (Docket #29, #34, #36).

Finally, Defendant Bella's Group Home, LLC ("BGH") filed a motion to dismiss on July 1, 2020. (Docket #42). Plaintiffs' daughter, D.M., was placed at BGH from July 13, 2017 to October 3, 2019. BGH's motion to dismiss is also fully briefed. (Docket #43, #45, #46).

## 2. LEGAL STANDARD

The Defendants seek to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] When evaluating motions to

---

[2]Technically, because the Hospital Defendants filed an answer and an amended answer to Plaintiffs' complaint (Docket #9, #20) their motion to dismiss should be construed as a motion for judgment on the pleadings. However, the Court employs the "same standard" when reviewing a motion to dismiss under Rule 12(b)(6) and a 12(c) motion for judgment on the pleadings. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). Thus, when reviewing both the Plaintiffs' and Hospital Defendants' submissions, the Court "view[s] the facts in the light most favorable" to Plaintiffs "and will grant the motion only if it appears

dismiss, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Id.* at 480. (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)) (alteration in original). A complaint that offers "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must identify allegations "that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Ultimately, dismissal is only appropriate "if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to the relief requested." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citation omitted).

**3.     RELEVANT FACTS**

Plaintiff Rabbi Alexander Milchtein is rabbi and Executive Director of Milwaukee Synagogue for Russian Jews: Congregation Mosiach Now, which serves a community of more than 1,400 families. He and his wife, Plaintiff Ester Riva Milchtein, are part of a very strict orthodox Jewish community. They have fifteen children, including daughters C.M., S.M., and D.M.

---

beyond doubt" that Plaintiffs cannot prove any facts that would support their claim. *Id.* (internal quotations and citation omitted).

### 3.1 C.M.

C.M. is Plaintiffs' oldest daughter who was diagnosed with multiple mental health conditions. In October 2011, C.M. called MCPS indicating that she was "deathly afraid to go home." Upon investigating this allegation, Holly Jones ("Jones"), an intake worker at MCPS, concluded that the children did not show signs of either physical or emotional abuse. However, because C.M. refused to stay at Plaintiffs' house, on October 18, 2011, Jones removed C.M. and took her to MCPS. C.M. spent that night at the Lutheran Social Services Assessment Center ("LSS") in Milwaukee.

The next day, Defendant Stacker, who was Jones's supervisor, detained C.M. because C.M. refused to go home. Although Jones told Stacker that she did not believe that any abuse occurred or was occurring at Plaintiffs' home, Stacker explained that she could not force C.M. to return there. Ultimately, Stacker ordered that C.M. go back to LSS.

The state court held a probable cause hearing on October 24, 2011, during which MCPS informed Plaintiffs that it would be sensitive to their religious desires as C.M.'s parents. Notwithstanding this assurance, C.M. was repeatedly placed in different Jewish homes for Sabbath, including with Jewish families who have "great animus" for Plaintiffs. Eventually, Plaintiffs and MCPS worked out a plan to address future Sabbath placements for C.M. Nevertheless, on or around November 4, 2011, a state employee named Catherine Flaherty filed an emergency motion to place C.M. with the McKinney/Mandelman family for Sabbath. Despite Plaintiffs' objections, the court granted this motion. Although Plaintiffs wanted C.M. to observe Sabbath at LSS, Defendant Kornblum filed another motion regarding this issue on November 9. Plaintiffs also aver that MCPS favored C.M.'s religious preferences over their own.

Case 2:19-cv-01834-JPS   Filed 10/27/20   Page 5 of 38   Document 48

Similarly, Plaintiffs had issues with C.M.'s foster care placements. Specifically, they allege that MCPS placed C.M. with families that "hold and observe religious beliefs that [were] hostile" to theirs. Plaintiffs also disapproved of some of the things that C.M. had access to while in foster care. Plaintiffs state that one of C.M.'s foster families provided her with a smart phone, internet access, and acting lessons. C.M. was also able to purchase a book of a sexual nature while with a foster placement.

Plaintiffs further allege that MCPS disregarded their preferences as to C.M.'s schooling. Plaintiffs' first choice was that C.M. attend online school. However, both MCPS and Plaintiffs eventually agreed that C.M. would go to an all-female Jewish school in Milwaukee. In order to attend this school, students must reside in Milwaukee at the time of enrollment. Plaintiffs allege that MCPS transferred C.M. out of Milwaukee prior to enrollment. Thus, C.M. was sent to a mixed-gender public school where she had unrestricted and unsupervised internet access. Notably, in accordance with their religious beliefs, Plaintiffs do not send their children to public schools. Plaintiffs take umbrage that MCPS did not select a foster family for C.M. within Milwaukee or fill out C.M.'s enrollment forms and submit them in a timely manner. Additionally, although the trial court had given MCPS the authority to return C.M. to her out-of-state boarding school, MCPS did not do so.

During C.M.'s case, Plaintiffs repeatedly told MCPS that they wanted to be notified of, consent to, and participate in any medical matters concerning their children. Plaintiffs allege that MCPS authorized numerous medical appointments without their consent or participation. Further, when Plaintiffs scheduled appointments for C.M., someone else would usually cancel them without notifying Plaintiffs. Plaintiffs also claim that

Case 2:19-cv-01834-JPS   Filed 10/27/20   Page 6 of 38   Document 48

they were not informed if or when someone rescheduled those appointments. Further, Plaintiffs aver that they were blocked from receiving C.M.'s medical information and, after being removed as "responsible parties" from C.M.'s insurance, were deprived access to her medical bills. They also claim that they should have been—but were not—given the opportunity to attend C.M.'s appointments or to transport her to or from the same.

According to Plaintiffs, C.M. was prescribed a contraceptive without their notification or consent. Additionally, because MCPS did not take C.M. to her psychiatrist, the psychiatrist dropped C.M. as a patient. Thus, she was unable to regularly receive her prescribed medications. Plaintiffs also allege that when they refused to give consent for C.M.'s medical appointments or procedures, MCPS sought temporary guardianships for C.M. to circumvent Plaintiffs' decisions.

During Plaintiffs' dealings with MCPS, Defendant Kornblum took over C.M.'s case from another Assistant District Attorney. This substitution was allegedly in violation of a Milwaukee County District Attorney's Office policy that does not allow for such substitutions. Believing that Defendant Kornblum's involvement was a source of religious conflict, Plaintiffs contacted Defendant District Attorney Chisholm regarding this substitution. Nevertheless, Kornblum remained involved in C.M.'s case. Plaintiffs allege that Kornblum submitted testimony and exhibits to the court claiming that Plaintiffs abused C.M. and that Kornblum made false and misleading statements regarding the observance of the Sabbath, the potential religious conflict of interest, and the existence of a court order authorizing MCPS's entry into Plaintiffs' home.

Upon determining that (1) C.M. would soon turn 18 and (2) dismissal of C.M.'s case would not deprive her of any services, the court dismissed C.M.'s case without a trial. However, Defendant Kornblum secured a stay pending appeal so that C.M. would continue to receive state support until her graduation. Plaintiffs did not appeal.

### 3.2    S.M.

S.M. is another one of Plaintiffs' daughters. On or around September 11, 2012, one of S.M.'s former teachers called Defendant Kornblum and informed her that S.M. was afraid to go home. Kornblum reported this call to MCPS and went to Plaintiffs' home to interview S.M. Kornblum was denied entry and given Plaintiffs' attorneys' contact information. That same afternoon, Kornblum contacted Judge Donald, of the Milwaukee County Circuit Court, seeking an order to pick up all eleven of Plaintiffs' children who were at their home. The following day, Judge Donald held a hearing regarding this issue. Because no one notified Plaintiffs of this hearing, they did not attend. Judge Donald ultimately determined that there was insufficient evidence to grant Kornblum's request. However, he allowed MCPS to interview S.M.

Plaintiffs allege that in an attempt to interview S.M., Defendants Konrardy Comey and Reyes forcibly entered their home. Although S.M. was not present, MCPS instructed the police to interview the Milchtein children who were there at that time. The police refused, believing that they did not have the authority to do so. Plaintiff Ester Riva Milchtein, who was not initially present during this ordeal, came home and informed MCPS that S.M. was at school in Illinois.

The next day, Reyes and Konrardy Comey traveled to Illinois to interview S.M. After learning about Judge Donald's order, Plaintiffs found

an Illinois attorney to represent S.M. However, S.M. dismissed the attorney and MCPS continued the interview, during which S.M. "stated that she is not fearful to go home." Post-interview, Defendant Kornblum informed another Milwaukee County Circuit Court Judge, Judge Christenson, that MCPS determined that "there was nothing rising to the level of abuse or neglect" that would warrant a protective services petition or detention.

Although MCPS concluded its investigation, MCPS told S.M. that they would help her if she was in Milwaukee. Eventually, S.M. used a bus ticket, which C.M. purchased for her, to return to Milwaukee. MCPS promptly seized S.M. upon her return and initiated protective services proceedings on the grounds that S.M. was afraid to go home. In April 2013, the state trial court dismissed the charges of neglect in S.M.'s case, but scheduled an August 2013 trial regarding the abuse charges. However, S.M.'s case was dismissed before trial.

After learning that her case was dismissed, S.M. ran away. She called Defendant Waldschmidt with CSSW and said that she was afraid to go home. According to Plaintiffs, this matter was allegedly screened out, but then Waldschmidt called either Defendant Bohn or Defendant Happach and the matter was screened in. Typically, when a matter is screened in, an assessment worker meets with the parent or child that same day. Because no assessment workers were available, David Blumberg picked up S.M. Shortly thereafter, MCPS asked if the Blumberg family would take in S.M. While placed with the Blumberg family, they gave S.M. material possessions and access to activities without Plaintiffs' consent.

To their dismay, Plaintiffs allege that MCPS honored S.M.'s religious preferences as opposed to Plaintiffs'. Plaintiffs also allege that because MCPS treated S.M. as homeless, she was able to choose (without Plaintiffs'

involvement) where to attend school. Plaintiffs also claim that MCPS denied them the ability to schedule and/or attend S.M.'s medical appointments, leaving S.M. in charge of her own medical care and decisions. Plaintiffs aver that throughout the course of several juvenile court hearings, Defendant Kornblum submitted false testimony and exhibits claiming that Plaintiffs abused S.M. Plaintiffs also allege that Defendants Kornblum, Reyes, Sherman, and Waldschmidt made false statements to the juvenile court pertaining to Plaintiffs' visitation rights, the times Plaintiffs visited or failed to visit S.M., and Plaintiffs' willingness to consent to S.M's receiving therapy. Despite the dismissal of S.M.'s case, her protective order ended when she was 18.

### 3.3 D.M.

The Court turns to Plaintiffs' third daughter, D.M. Plaintiffs allege that in 2016, D.M. attempted suicide while studying abroad in Israel. After she returned home, Plaintiffs ensured that D.M. received counseling and psychiatric care. On April 1, 2017, D.M. left Plaintiffs' home after an argument with Plaintiff Alexander Milchtein and did not return. The Milwaukee Public Defender's Office requested temporary physical custody of D.M. on April 5, 2017. The state court determined that D.M. was a runaway and allowed her to voluntarily stay at Pathfinders, a youth shelter, for up to twenty days. The court ordered Plaintiffs to refrain from contacting D.M. during her stay at Pathfinders.

Prior to D.M.'s departure from Pathfinders, both MCPS[3] and DHHS filed a request for temporary custody alleging that they needed to take

_____

[3]The Court notes that defendants affiliated with MCPS are considered "State Defendants" and not "County Defendants" because MCPS is a division of the Wisconsin Department of Children and Families. This distinction is important

Case 2:19-cv-01834-JPS   Filed 10/27/20   Page 10 of 38   Document 48

physical custody of D.M. because she was afraid to go home. On April 26, 2017, the court granted the agencies' request, finding probable cause on the grounds that Plaintiffs were unable to provide D.M. adequate supervision and care. The court subsequently amended its order, finding that probable cause existed because it was likely that D.M. could cause injury to herself or was at risk of running away or being taken away, which (in turn) would cause her to be unavailable for further court proceedings. According to Plaintiffs, the court's logic was that because D.M. had harmed herself in the past, she was in need of protection to prevent future self-harm.

DHHS's Delinquency and Court Services Division held a dispositional hearing on June 22, 2017. MCPS's and DHHS's Original Dispositional Report, which they submitted to the court, indicated it was not necessary to remove D.M. from the family home. Nevertheless, DHHS asserted to the court that it was contrary to D.M.'s welfare and to that of the community because D.M. was refusing to return home. At a dispositional hearing on July 13, 2017, the Children's Division of Milwaukee County Circuit Court adjudicated D.M. as habitually truant and found that placing her with Plaintiffs would be contrary to both her welfare and the welfare of the community. Thus, the court placed D.M. with Defendant BGH. Prior to this hearing, Plaintiffs met with BGH staff to discuss BGH's consent forms, as well as Plaintiffs' requests and concerns. Plaintiffs made some additions to the consent forms and signed them.

Plaintiffs later e-mailed BGH to address some of their additional issues relating to D.M.'s placement. For example, Plaintiffs were displeased

---

because both Plaintiffs and the State Defendants agree that the State Defendants only took actions that form the basis of their complaint with regard to Plaintiffs' daughters C.M. and S.M., not D.M. *See* (Docket #24 at 5).

that BGH had given D.M. a bus pass on the Sabbath, allowed her to use a cell phone other than the one Plaintiffs provided to her, and transported her to outings without their consent. Plaintiffs also allege that BGH inserted dates on consent forms to reflect dates different from when Plaintiffs actually signed those forms. Further, Plaintiffs were concerned about BGH's request that Plaintiffs refrain from contacting BGH. Throughout the course of D.M.'s dealings with DHHS and her stay at BGH, Plaintiffs also claim that D.M. was not taking her medications regularly and that no one informed Plaintiffs when one of D.M.'s medical appointments was cancelled.

On July 26, 2017, BGH informed Defendant Woitel that it was filing a "notice of removal" due to D.M.'s behavioral issues while at BGH. On August 14, 2017, pursuant to this "Emergency Change of Placement Notice," D.M. would be placed with Plaintiffs. Defendant Woitel set the placement date for August 28, which was also the date of D.M.'s next hearing. However, on August 24, Defendant Woitel sent an e-mail to Plaintiffs indicating that BGH was going to remove D.M. on October 12. According to Woitel, this removal was not on an emergency basis.

On October 2, Woitel called MCPS to report that BGH was no longer willing to host D.M. Woitel allegedly also told MCPS that during an emergency placement hearing, Plaintiffs agreed to sign D.M. into Pathfinders but then later refused to do so. On October 3, Woitel sought an emergency *ex parte* hearing claiming that D.M. was losing her placement because Plaintiffs were stalking and harassing BGH staff and that Plaintiffs had "utter disregard" for D.M.'s safety and well-being. D.M.'s attorney noted that Woitel's stance was a "significant development" because, up until that hearing, MCPS and DHHS had taken the position that D.M.

should return home. At the hearing, Milwaukee County Circuit Court Judge, Judge Carroll, ordered that D.M. go to an MCPS approved placement and that MCPS also conduct an investigation. Judge Carroll referred the case to the District Attorney's office for a potential protective services petition. Woitel called in the referral to MCPS, but this referral was screened out. Plaintiffs claim that, notwithstanding the limitations of Judge Carroll's order, DHHS signed various releases for D.M.'s medical, psychiatric, and educational records. Plaintiffs also claim that they only received notice of a temporary physical custody hearing that was scheduled for October 3, 2017.

After being temporarily hospitalized, MCPS placed D.M. with Daniel and Shelly Weber, who held different religious beliefs than Plaintiffs. Notably, Plaintiffs were ordered to refrain from contacting the Webers. Plaintiffs allege that while in the Weber's custody, D.M. cut herself in an act of self-harm. Because D.M. found the Weber's home "very triggering," she eventually left one night and slept at Walker's Point. In May 2018, D.M. left the Webers and returned to Plaintiffs' home. According to Plaintiffs' complaint, D.M.'s protective services order expired in July 2018.

Plaintiffs allege that Woitel made false and misleading statements throughout D.M.'s case. Such false and misleading statements pertain to Plaintiffs' cooperation (or lack thereof) throughout D.M.'s case, Plaintiffs' concern for D.M., and complaints of sexual and/or physical abuse in the home.

### 3.4 Plaintiffs' Previous Federal Case

In their respective briefs, the parties dispute the Seventh Circuit's holding in Plaintiffs' previous federal civil case, *Milchtein v. Chisholm*, 880

F.3d 895 (7th Cir. 2018) (hereinafter "*Michtein II*"), as well as the lower court's decision in *Milchtein v. Chisholm*, Case No. 13-C-940, 2017 WL 414251 (E.D. Wis. Jan. 31, 2017) (hereinafter "*Milchtein I*"). Because both *Milchtein I* and *Milchtein II* are useful to this Court's disposition of the motions to dismiss before it, the Court finds it necessary to provide summaries of those decisions.

### 3.4.1 *Milchtein I*

On August 20, 2013, Plaintiffs brought an action in this District against Defendants Chisholm, Joseph, Kornblum,[4] and Anderson in their official capacities. Plaintiffs asserted that the defendants violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights and sought both declaratory and injunctive relief. Chisholm, Joseph, and Anderson filed a motion for summary judgment, arguing that Plaintiffs' claims were moot and/or otherwise barred by the *Rooker-Feldman* doctrine. *Milchtein I*, 2017 WL 414251, at *1, *10, *13. This doctrine, named after *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "essentially precludes lower federal court jurisdiction over claims seeking review of state court judgments or over claims 'inextricably intertwined' with state court determinations." *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 996 (7th Cir. 2000) (citation omitted).

First, the *Milchtein I* Court determined that Plaintiffs' claims were moot because C.M.'s and S.M.'s cases had been dismissed and both C.M. and S.M. were at least eighteen years old and, thus, no longer subject to the jurisdiction of either MCPS or Children's Court. *Milchtein I*, 2017 WL 414251, at *10. Plaintiffs argued that their case was not moot because (1) it

---

[4]Kornblum was dismissed from *Milchtein I* on January 14, 2014.

Case 2:19-cv-01834-JPS   Filed 10/27/20   Page 14 of 38   Document 48

was "capable of repetition but evading review" or (2) "otherwise survives" because Plaintiffs were "challenging an ongoing policy." *Id.* The Court rejected both arguments. *See id.* at *11–13.

The district court also addressed the parties' dispute regarding whether *Rooker-Feldman* prevented the lower federal court's intervention. The Court acknowledged Plaintiffs' argument that because they were not challenging a state court judgment, *Rooker-Feldman* did not apply. *Id.* at *14. However, the *Milchtein I* Court determined that because Plaintiffs were asking it to evaluate "decisions . . . taken under the supervision of the [state] Circuit Court or pursuant to an order," such decisions were "inextricably intertwined with the Children's Court proceedings." *Id.* at *14–15. Thus, the district court granted the defendants' motion for summary judgment based on both mootness grounds and *Rooker-Feldman*.

### 3.4.2 *Milchtein II*

Plaintiffs filed an appeal in which they contended that their case was not moot because (1) the district court could have entered a declaratory judgment and (2) they had twelve minor children who could possibly engender the same type of situation that brought Plaintiffs into Children's Court. *Milchtein II*, 880 F.3d at 897. Although the appellate court ultimately affirmed the district court's decision, it explained:

> [i]f a contention in federal litigation is intertwined with the state litigation only in the sense that it entails a factual or legal contention that was, or could have been, presented to the state judge, then the connection between the state and federal cases concerns the rules of preclusion, which are not jurisdictional and are outside the scope of the *Rooker[-]Feldman* doctrine.

*Id.* at 898.

The Seventh Circuit clarified that because Plaintiffs were not seeking the alteration of a state court's judgment, *Rooker-Feldman* did not preclude federal jurisdiction. *Id*. Nevertheless, the Seventh Circuit agreed that because the Milchteins wanted the federal court to essentially comment on, by way of declaratory relief, what the Plaintiffs perceived to be the state court's errors (i.e., provide an advisory opinion), Plaintiffs' claims were not justiciable. *Id.*

Plaintiffs argued that any federal decision would not be advisory because it could affect future litigation involving their other children. *Id.* The Seventh Circuit concluded that *even if* there were future state proceedings concerning the Milchteins' remaining minor children and those future proceedings were not moot because the state proceedings were too short, a federal court would be required to abstain pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* "*Younger* prevents a federal judge from resolving isolated legal issues that might matter to proceedings already before a state agency or judge." *Id.* at 899. Thus, "if a state-initiated proceeding concerning one of the Milchteins' remaining children comes before Wisconsin's child-welfare agency and judiciary," the Seventh Circuit directed that federal courts "abstain and let the Milchteins present their constitutional arguments to the state officials." *Id.* Plaintiffs' claims for both injunctive and declaratory relief against Chisholm, Joseph, and Anderson, in their respective official capacities, remained dismissed. *Id.* It is against this factual backdrop that this Court now turns its attention to the motions to dismiss before it.

### 4. PLAINTIFFS' § 1983 CLAIM FOR DAMAGES

#### 4.1 Overview of § 1983 Damages Claim

Plaintiffs' first claim for relief, in the form of damages, is brought pursuant to 42 U.S.C. § 1983 and has eight separate counts. Notably, several defendants argue that, in light of *Milchtein II*, Plaintiffs' claim for damages is non-justiciable. Defendants are incorrect. *See Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 153 (7th Cir. 1990) (holding that the expiration of the ordinance at issue "d[id] not render the controversy moot because there still remain[ed] a live controversy between the parties as to whether the ordinance was unlawful thus entitling the plaintiff to damages."); *Roehl v. City of Naperville*, 857 F. Supp. 2d 707, 710–11 (N.D. Ill. 2012) (holding that while defendant's enactment of a new version of an ordinance "mooted all prospective relief plaintiff seeks . . . including declaratory relief," the new ordinance did not moot the plaintiff's claim for damages that stemmed from the prior ordinance); *Goodvine v. Swiekatowski*, No. 08-cv-702-bbc, 2010 WL 55848, at *3 (W.D. Wis. Jan. 5, 2010) (determining that prisoner's religious discrimination claim was not moot, unlike his claims for declaratory and injunctive relief, "because monetary damages are available for claims such as this one that are brought under § 1983.")

As discussed in Section 5, *infra*, this Court agrees that Plaintiffs' claims for declaratory and injunctive relief are non-justiciable. However, the Court finds that Plaintiffs' claim for monetary damages is still very much "live" and should be addressed.

Case 2:19-cv-01834-JPS   Filed 10/27/20   Page 17 of 38   Document 48

### 4.2 Some Counts of Plaintiffs' § 1983 Claim are Barred by the Statute of Limitations

Notably, the State Defendants, County Defendants, and Hospital Defendants argue that Plaintiffs' claim as to both C.M. and S.M. is time-barred and must be dismissed. It is "unusual" for a Court to dismiss a complaint as untimely at the pleading stage because complaints "need not anticipate and overcome affirmative defenses, such as the statute of limitations." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (citation omitted). However, "if a plaintiff alleges facts sufficient to establish a statute of limitations defense" it is appropriate for the district court to dismiss the complaint on that ground. *Id.* (citation omitted).

"Section 1983 claims are subject to the statute of limitations for personal injury actions in the state in which the alleged injury occurred." *Behav. Inst. of Ind., LLC v. Hobart City of Common Council*, 406 F.3d 926, 929 (7th Cir. 2005) (citation omitted). In *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989), the Seventh Circuit held that Wisconsin's then six-year personal rights statute of limitations,[5] as enumerated in Wisconsin Statutes section 893.53, applied to § 1983 actions. This means that Plaintiffs had six years to file a § 1983 claim from the date that such claim accrued. Section 1983 claims "accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly v. City of Chi.*, 4 F.3d 509, 511 (7th Cir. 1993) (citation omitted). To determine whether Plaintiffs' claim is time-barred, the Court must first identify the injury and then figure out the

---

[5]As of April 15, 2018, Wisconsin Statutes section 893.53 now has a three-year statute of limitations.

date on which Plaintiffs could have sued for that injury. *Behav. Inst. of Ind.*, 406 F.3d at 929.

Importantly, Plaintiffs' complaint alleges that the State Defendants and the Hospital Defendants violated Plaintiffs' rights with respect to their daughters C.M. and S.M., but not D.M. The parties are in agreement that any events pertaining to C.M. took place in between October 11, 2011 and December 2012, when her case was dismissed. Similarly, the parties agree that S.M.'s case began in September 2012. Although her case was dismissed as of August 2013, S.M.'s case was subsequently continued until December 20, 2015, when she turned 18.[6] However, the last actions referenced in Plaintiffs' complaint taken by any Defendants concerning S.M. occurred in August 2013. Thus, the State Defendants and the Hospital Defendants assert that Plaintiffs' § 1983 claim for damages is barred by the six-year statute of limitations. The County Defendants argue that any counts against them that stem from their dealings with C.M. and S.M. are barred as well. Plaintiffs respond that their claim is not barred for two reasons, which the Court addresses, and rejects, in turn.

### 4.2.1 Tolling

Plaintiffs argue that, pursuant to Wisconsin Statute section 893.13(2), by filing the aforementioned civil case, *Milchtein I*, they tolled the six-year statute of limitations. Plaintiffs are correct that the Court should look to Wisconsin's tolling rule. *See Ill v. Roland*, 812 F. Supp. 855, 859 (N.D. Ill. 1993)

---

[6]In their complaint, Plaintiffs state that S.M.'s case was continued until December 14, 2014, (i.e., Plaintiffs were off by an entire year). In some of their response briefs, *see, e.g.,* (Docket #34 at 6), Plaintiffs correct this "misstatement," clarifying for the Court that after being dismissed in August 2013, S.M.'s case was "immediately picked up again" and "continued until she turned 18 and was finally dismissed at that time at the end of 2015." (*Id.*)

("Federal courts must also apply the states' applicable tolling rules as well.") (citation omitted). However, section 893.13(2) does not save Plaintiffs' claim in this action. Per section 893.13(2):

> A law limiting the time for commencement of an action is tolled by the commencement of the action to enforce the cause of action to which the period of limitation applies. The law limiting the time for commencement of the action is tolled for the period from the commencement of the action until the final disposition of the action.

Plaintiffs' reliance on this statute is flawed because they conflate the "cause of action" from their prior federal civil case with the present civil case. Certainly, Plaintiffs' claims in *this* case arise out of most of the same transactions described in *Milchtein I*. However, the Wisconsin Court of Appeals held that Wisconsin Statutes section 893.13(2) refers only to an action already in existence, not a "subsequently filed new action arising out of the same transaction as a previous case but seeking relief on different causes of action." *Dasko v. Kendziorski*, 568 N.W.2d 321 (Table), 1997 WL 52993, at *1 (Wis. Ct. App. Feb. 11, 1997).

In Plaintiffs' 2013 civil suit, they sued only three of the State Defendants in their *official*, and not individual, capacities. In this case, Plaintiffs bring their § 1983 claim against the State Defendants in their respective individual capacities *only*. Therefore, because this suit involves different causes of action as to Defendants Chisholm, Joseph, and Anderson, the statute of limitations has not been tolled. *See Ladien v. Bd. of Trs., Univ. of Ill.*, No. 93 C 6573, 1994 WL 395078, at *4 (N.D. Ill. Jul. 27, 1994) (holding that the Illinois "savings" statute, which allows a plaintiff to refile a case within one year of voluntary dismissal even if the statute of limitations has already run, was inapplicable to the plaintiff's new official

capacity claims against defendants sued only in their individual capacities in the original complaint). Further, any counts of Plaintiffs' claim that they bring against Defendants who were not named in Plaintiffs' prior suit are new causes of action. *See Hewitt v. Nygen*, Case No. 16–C–1481, 2018 WL 2100303, at *2 (E.D. Wis. May 7, 2018) (holding that the statute of limitations was not tolled as to defendants who were not named in an original civil suit because the plaintiff had not previously commenced an action against those individuals). In sum, Plaintiffs' 2013 civil suit did not toll the six-year statute of limitations as to any Defendants in this action; thus, Plaintiffs' claim as to C.M. and S.M. is untimely.

### 4.2.2  Discovery

In their response briefs, Plaintiffs cursorily state the proposition that the limitations period only begins to run "when the plaintiff knows or should know that his or her constitutional rights have been violated[,]" i.e., the discovery rule. *See* (Docket #25 at 4, Docket #33 at 3, Docket #34 at 5) (quoting *Kelly*, 4 F.3d at 511). In each of the aforementioned response briefs, Plaintiffs argue that they lacked the requisite knowledge for both general and specific constitutional violations, which they did not mention in their complaint. *See, e.g.*, (Docket #33 at 3) ("Although many constitutional violations concerning S.M. occurred in 2013, there were more that happened after 2013 that may not be listed in the complaint. In one example, among many in 2014, multiple doctor appointments occurred where the Milchteins were denied the ability to schedule and attend the appointments with their daughter, S.M. . . . So these constitutional violations occurred much later than Defendants realize.").

It appears that Plaintiffs are trying to avail themselves of the discovery rule in their response brief. To be sure, "a plaintiff is not required

Case 2:19-cv-01834-JPS   Filed 10/27/20   Page 21 of 38   Document 48

to negate an affirmative defense, such as the statute of limitations, in his complaint." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). However, "a plaintiff can plead himself out of court if he alleges facts that affirmatively show that his suit is time-barred." *Id.*; *see also Kincheloe v. Farmer*, 214 F.2d 604, 605 (7th Cir. 1954) ( "Plaintiff by the allegations of his complaint erected the limitation bar and it was his duty in order to extricate himself therefrom to plead any exceptions upon which he relied.") Further, "a plaintiff may not amend his complaint in his response brief." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

Plaintiffs have erected a bar in their complaint with regard to their daughters C.M. and S.M. As far as C.M. is concerned, Plaintiffs' alleged injuries stem from concrete events that took place in between October 18, 2011, the date C.M. was first seized, and December 3, 2012, the date her case was dismissed. Similarly, any and all alleged injuries that the State, Hospital, and County Defendants caused Plaintiffs (with regard to S.M.) stem from actions taken by those defendants in between S.M.'s seizure in September 2012 and shortly after the state court dismissed her case in August 2013. *See, e.g.*, (Docket #31 at 4) ("The latest date related to the S.M. claims detailed against the State Defendants in the complaint is August 2013, following the state court's dismissal of the protective services proceedings.") Plaintiffs do not allege in their complaint, or even allude to the possibility, that they discovered or learned of their injuries after their daughters' cases were dismissed. Because Plaintiffs may not amend their complaint via comments in their response briefs, the Court will not consider such comments to suggest (for the first time) that they recently discovered the aforementioned defendants' constitutional violations. Such remarks

regarding the discovery rule appear to be a last-ditch effort to save their complaint.[7]

In light of the foregoing, the Court will dismiss Counts One, Two, and Six as to both the State and Hospital Defendants, and Counts Three, Four, Five, and Seven as to the State Defendants. Further, Plaintiffs' claim against the County Defendants (Counts One, Two, Three, Four, and Six) is dismissed to the extent it pertains to C.M. and S.M. However, because Plaintiffs' aforementioned counts against the County Defendants also implicate the County Defendants' actions regarding D.M., those counts are not time-barred. Similarly, Plaintiffs claim against BGH is not time-barred. The Court now evaluates the parties' arguments regarding Plaintiffs' remaining claims.

---

[7]Interestingly, and perhaps wisely, enough, Plaintiffs do not attempt to invoke the "continuing violation" doctrine, which also governs claim accrual. *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001). Such violations "signify[] that a plaintiff can reach back to [the alleged injury's] beginning even if that beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct" and are typically related to "injuries . . . [that] are the consequence of a numerous and continuous series of events." *Id.* (string citation omitted). Other circuits have determined that, in the context of child removal cases, a parent's alleged relevant injury occurs when his or her contact with their child is first restricted or when removal first occurs. "The ongoing restriction that follow[s] is best characterized as the 'continuing impact' of the initial restriction rather than a continuing violation." *Sansome v. Fairall*, 739 Fed. App'x. 877, 880 (9th Cir. 2018) (holding that the plaintiff's claim that defendants violated his Fourteenth Amendment right to familial association accrued when his contact with his children was first restricted); *see also Canfield v. Douglas Cty.*, 619 Fed. App'x 774, 778–79 (10th Cir. 2015) (commenting that, although the Tenth Circuit had never held that the continuing violation doctrine applied to § 1983 cases, even if it had, the plaintiff's familial association claims accrued when her children were first removed from her custody). Thus, even if Plaintiffs *had* raised this argument, the continuing violation doctrine would not save the claim at issue.

### 4.3    Qualified Immunity

The Court first addresses the County Defendants' argument that because they are entitled to qualified immunity, any remaining claims against them should be dismissed. Qualified immunity shields officials from the civil consequences of their constitutional violations when the law did not put the officials on clear notice that their conduct would be unlawful. *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that the doctrine protects officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."). "Put simply," says the Supreme Court, "qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Defendants may not avail themselves of qualified immunity if (1) the defendants' alleged actions violated the plaintiff's constitutional rights; and (2) the implicated right was clearly established at the time. *Jones v. Wilhelm*, 425 F.3d 455, 461 (7th Cir. 2005).

When the defense is raised, the plaintiff bears the burden to defeat it. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). However, Plaintiffs do not have a duty to "plead around a qualified immunity defense." *Denwidde v. Mueller*, 775 Fed. App'x 817, 820 (7th Cir. 2019). The Seventh Circuit has held that "because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Id.* (citation omitted). At this stage, the Court scrutinizes Defendants' conduct, as alleged in the complaint, to determine whether that conduct was objectively

legally reasonable. *Id.* Although Plaintiffs must describe the rights that have allegedly been violated with "adequate specificity," the Seventh Circuit instructs that "there need not be a case directly on point so long as existing precedent is sufficiently analogous as to place [the defendants] on notice that their conduct was unlawful." *Id.*

According to the County Defendants, Plaintiffs have not alleged that the County Defendants violated Plaintiffs' "clearly established" constitutional rights. The County Defendants' argument appears to be one of form rather than substance. They argue that Plaintiffs' allegations are presented in an overwhelmingly broad and conclusory fashion. Thus, the the County Defendants could not decipher which constitutional rights Plaintiffs claim that the County Defendants violated.

To be sure, Plaintiffs' pleading is anything but a model of clarity or brevity. In fact, it is an unwieldy, repetitive, scattered, and, at times, conclusory one-hundred-page behemoth. Further, Plaintiffs have not helped themselves by providing a confusing subtitle prior to each count, (e.g., "Count One: Procedural Due Process, Unlawful Seizure/Medical Exam, Invasion of Privacy, and Interruption of Familial Association"). Notwithstanding its inadequacies, the Court finds that Plaintiffs' complaint puts the County Defendants on notice of which constitutional rights are at issue with one exception:[8]

> Claim One, Count One: County Defendants violated
> Plaintiffs' rights to familial association, privacy, and
> procedural due process by removing, detaining, and

_____

[8]As discussed in Section 4.4.2 *infra*, in Claim One, Count Eight, Plaintiffs allege that by failing to ensure D.M.'s safety, the County Defendants violated Plaintiffs' constitutional rights. Because Plaintiffs do not explain what constitutional right the County Defendants violated by way of their actions or inactions concerning D.M., the Court finds that Plaintiffs did not provide sufficient notice to the County Defendants.

continuing to detain D.M. without a protective custody warrant and failing to pursue or investigate Plaintiffs in a less intrusive manner.

<u>Claim One, Count Two</u>: County Defendant Woitel violated Plaintiffs' procedural due process rights when she sought a court order for an emergency hearing at which Plaintiffs were not able to be heard.

<u>Claim One, Count Three</u>: County Defendant Woitel violated Plaintiffs' procedural due process rights by making several false and misleading statements to the state court.

<u>Claim One, Count Four</u>: County Defendant Mertens knew that MCPS agents were engaged in policies that violated Plaintiffs' constitutional rights and failed to confront such policies and/or train employees.

<u>Claim One, Count Six</u>: County Defendants violated Plaintiffs' First Amendment and substantive Due Process rights by disregarding their religious beliefs and preferences concerning D.M.'s religious upbringing.

<u>Claim Two</u>: County Defendants and BGH conspired to deprive Plaintiffs of their First and Fourteenth Amendment Rights in violation of 42 U.S.C. § 1985.

<u>Claim Four</u>: That there were or are widespread customs at Milwaukee County and DHHS that caused the violation of Plaintiffs' First, Fourth, and Fourteenth Amendment rights (i.e., a *Monell* claim against the County and DHHS).

Plaintiffs were charged with stating a plausible grievance "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Denwiddie*, 775 Fed. Appx. at 820. The Court finds that Plaintiffs have met their burden—albeit in a rather inartful fashion. Because the Court determines that Plaintiffs have failed to state claims as to Claim One, Counts Four and Eight, Claim Two, and Claim Four, *see infra* Sections 4.4.1, 4.4.2, 4.4.3, and 4.4.4, the County Defendants need not address, via future submission, whether qualified immunity

protects them as to those claims. However, if they would like to argue that the remaining constitutional violations were not "clearly established," the County Defendants may submit additional authority in support of their position.

### 4.4 Plaintiffs' Remaining Claims for Damages

The Court now turns to Plaintiffs' remaining counts of Claim One for damages, beginning with the counts that the Court will dismiss for Plaintiffs' failure to state a claim.

#### 4.4.1 Claim One, Count Four: Supervisor Liability

The Court grants the County Defendants' motion for failure to state a claim as to Plaintiffs' supervisor liability claim against County Defendant Mertens. The crux of Plaintiffs' claim against Mertens is that, as a supervisor with DHHS, he knew or had reason to know that employees had the custom of violating a myriad of constitutional rights. Plaintiffs also allege that Mertens knowingly and willfully allowed such practices to persist.

Supervisors "need not participate directly in the deprivation [of civil rights] for liability to follow under § 1983." *Backes v. Vill. of Peoria Heights, Ill.*, 662 F.3d 866, 869–70 (7th Cir. 2011) (internal quotation and citation omitted). Indeed, so long as a supervisor "know[s] about the conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye for fear of what they might see[,]" they may be held liable. *Id.* at 870 (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.2001)). In other words, supervisors may be held liable under § 1983 for the actions of their subordinates if they acted "either knowingly or with deliberate, reckless indifference." *Backes*, 662 F.3d at 870. *See also Chavez*, 251 F.3d at 651; *Jones v. City of Chi.*, 856 F.2d 985, 992–93 (7th Cir. 1988).

Plaintiffs' nearly fifteen-page supervisor liability claim is wholly conclusory and must be dismissed. It is void of factual allegations that would allow the Court to draw any reasonable inference that Mertens knew about or condoned the allegedly illegal behaviors of his subordinates. At most, Plaintiffs provide e-mail correspondence between Plaintiff Ester Riva Milchtein and Mertens in which Ester asks a series of questions about foster placement. Neither this e-mail nor the whole of Plaintiffs' complaint provides a factual basis that would allow the Court to draw the reasonable inference that Mertens is liable under a theory of supervisor liability.

### 4.4.2 Claim One, Count Eight: Failure to Ensure Safety

In Claim One, Count Eight, Plaintiffs allege that the County Defendants failed to ensure D.M.'s safety while in the County's custody. Plaintiffs do not state which constitutional right of theirs was violated by way of this alleged failure. Plaintiffs cite to *K.H. v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990), in support of the proposition "that the Constitution requires the responsible state officials to take steps to prevent children in state institutions from deteriorating physically or psychologically." Notably, in *K.H.*, the child-plaintiff filed the action on her own behalf via her public guardian.

Under Article III of the Constitution, "[a] federal court's jurisdiction can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Again, Plaintiffs do not allege that their rights were violated as the result of the County Defendants' alleged failure to protect D.M. Nor do they contend that they bring this Count on D.M.'s behalf. Thus, this count is non-justiciable and must be dismissed.

### 4.4.3 Claim Two: Conspiracy to Violate Civil Rights

Plaintiffs allege that BGH and the County Defendants conspired to violate Plaintiffs' right to free exercise of religion under the First Amendment and their substantive due process rights. "A plaintiff raising a claim under [42 U.S.C.] § 1985(3) must allege (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Majeske v. Fraternal Order of Police, Local Lodge No. 7*, 94 F.3d 307, 311 (7th Cir. 1996). Notably, "to withstand dismissal under 12(b)(6)," a plaintiff must allege the necessary facts, i.e., "the who, what, when, why, and how." *Browkaw v. Mercer Cty.*, 235 F.3d 1000, 1016 (7th Cir. 2000). Further, "there cannot be a civil cause of action under § 1985 without an overt act." *Lenard v. Argento*, 699 F.2d 874, 883 (7th Cir. 1983).

Plaintiffs have not sufficiently alleged the existence of a conspiracy between BGH and the County Defendants. The relevant portion of Plaintiffs' complaint discusses their interactions with BGH, specifically, sitting down and discussing the consent forms with BGH. They further allege that BGH ignored Plaintiffs' directives regarding D.M., as well as prevented Plaintiffs from communicating with D.M. and from making determinations about her health care and religious practices. At most, Plaintiffs allege that Woitel, a DHHS employee, informed Plaintiffs that they could not contact BGH directly. Plaintiffs also state that DHHS "ratified and assisted" in BGH's violations of Plaintiffs' constitutional rights.

All the Court has before it is information regarding "who" allegedly partook in this conspiracy, yet there is no reference to any overt act. Plaintiffs' allegations are void of any factual references as to the "what, when, why, and how" of the alleged conspiracy to violate their rights. Without more, Plaintiffs' claim cannot proceed.

### 4.4.4   Claim Four: *Monell* Claim

Plaintiffs also allege that DHHS and Milwaukee County knew or should have known that their employees engaged in regularly established customs and practices that were the moving force behind the alleged violations of Plaintiffs' constitutional rights.

Municipal entities such as the County and DHHS cannot be held liable for an employee's unconstitutional conduct on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). To maintain a § 1983 claim against a municipal entity, the plaintiff must first identify a "policy or custom" attributable to governmental policymakers. *Gable v. City of Chi.*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell*, 436 U.S. at 691–94). This requirement serves to "distinguish acts of the municipality from acts of [its] employees . . . and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (internal quotations and citations omitted). A "policy or custom" may take one of three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express [governmental] policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Gable*, 296 F.3d at 537 (citation

omitted). The plaintiff must also demonstrate "the requisite causation," which means that "the policy or custom was the 'moving force' behind [his] constitutional deprivation." *Id.* (quoting *Monell*, 436 U.S. at 691–94).

The policies or customs at issue appear to take the second form. Specifically, Plaintiffs claim that the County and DHHS maintained *de facto* policies that involved detaining or removing children from their families without exigent circumstances, a court order, and/or consent; removing children from their families without first obtaining a warrant when no exigency exists; removing and detaining children for an unreasonable period that extends long after the alleged basis for detention has been negated; interrogating and/or examining a child by himself or herself without judicial authorization or parental consent; and refusing to implement a practice of regular and adequate training to its employees so as to ensure the protection of constitutional rights.

Only if Defendants consciously ignored a need for action can it be said that they have a custom amounting to a *de facto* "policy" of violating constitutional rights. *See City of Canton*, 489 U.S. 378, 388 (1989); *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) ("If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work . . . ."). Allegations related to one offender, or one offense, are simply not enough. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (isolated acts of misconduct are insufficient to state a widespread practice claim under *Monell*); *Baskin v. City of Des Plaines,* 138 F.3d 701, 705 (7th Cir. 1998) ("[a] plaintiff cannot establish a § 1983 claim against a municipality by simply alleging that the municipality failed to investigate an incident or to take punitive action against the alleged wrongdoer."). Plaintiffs must allege facts

tending to show that the County and DHHS policymakers were aware of the social workers' behaviors or that those behaviors were so persistent and widespread that the County and DHHS should have known about them. *See Hoskin v. City of Milwaukee*, 994 F. Supp. 2d 972, 980 (E.D. Wis. 2013). To assert that a custom is "so entrenched and well-known as to carry the force of policy," at a minimum, one should be able to describe the offending conduct with some precision. *Terry v. Cty. of Milwaukee*, No. 17-CV-1112-JPS, 2018 WL 25667721, at *8 (E.D. Wis. June 4, 2018) (quoting *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012)).

Again, the Court finds Plaintiffs' claims to be conclusory and void of sufficient factual allegations to show the existence of *de facto* customs or policies. "If a practice is too expansively defined . . . it is nonsensical to charge a municipal entity with notice of such a practice." *Id.* at *9. Indeed, Plaintiffs have had three children involved in Milwaukee County Children's Court and at least one of those children was under the purview of DHHS. Yet, their complaint is lacking factual support to show that these specific issues arose many times or that these issues affected persons other than Plaintiffs' children. For example, some of Plaintiffs' allegations concern only one of their three daughters. Plaintiffs also allege that the County and DHHS had policies which are not tied back to anything in the complaint. For example, Plaintiffs complain there is a County and DHHS policy that permits the interrogation of children without judicial authority. However, the Court does not see any allegations in the complaint suggesting that the County or DHHS conducted interviews without judicial authorization. Ultimately, Plaintiffs allege that the County Defendants' conduct took place in varied contexts with regard to (at most) Plaintiffs' three daughters over a considerable period of time. Such allegations

"cannot be fused together" to show that the defendants had a policy or practice that led to their constitutional deprivations. *Id.* at *8. Thus, the Court will dismiss Plaintiffs' *Monell* claim.

### 4.4.5   Claim One, Counts One, Two, Three, and Six

The Court will not dismiss Claim One, Counts One, Two, Three, and Six as to the County Defendants at this juncture to the extent that Plaintiffs' allegations pertain to the County Defendants' actions against D.M. The Court orders further briefing from the County Defendants to address whether Plaintiffs have stated claims for relief that withstand Rule 12(b)(6). The County Defendants shall have until November 30, 2020 to file their motion and an accompanying brief; Plaintiffs shall have until December 14, 2020 to file a response; and the County Defendants must submit a reply on or before December 21, 2020.

## 5.   PLAINTIFFS' CLAIMS FOR DECLARATORY AND/OR INJUNCTIVE RELIEF: CLAIMS THREE, FIVE, AND SIX

In Plaintiffs' third claim for relief, they request that this Court enjoin and prohibit MCPS from continuing nine alleged policies, practices, or customs. In their fifth claim for relief, Plaintiffs seek declaratory relief that Wisconsin Statutes sections 48.13(3), (3m), (10), and 48.02(1)(a), and "MCPS' unwritten 'profound fear' policy," are vague and overbroad. Finally, in their sixth claim for relief, Plaintiffs request that this Court declare Wisconsin Statutes section 48.57(1)(d), which allows for MCPS "[t]o provide for the moral and religious training of children in its care according to the religious belief of the child or of his or her parents[]" in violation of the First Amendment, and thus, unconstitutional. The State Defendants argue that Plaintiffs' claims are moot because those claims relate to state

actions taken against C.M. and S.M.—who are now adults—many years ago. This Court agrees.

Pursuant to Article III of the Constitution, this Court has jurisdiction "at all stages of review, not merely at the time the complaint is filed." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 860 (7th Cir. 2018) (internal quotations and citations omitted). That said, federal courts do not have the power to decide questions "that cannot affect the rights of the litigants in the case before them." *Roehl*, 857 F. Supp. 2d at 710. "[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is considered moot. *Lovell*, 888 F.3d at 860 (citations omitted). Because this Court determines that, at this juncture, neither declaratory nor prospective injunctive relief could redress Plaintiffs' alleged injuries, Plaintiffs' claims for such relief are moot. *Id.*

Plaintiffs concede that their daughters' cases are closed and that there are currently no pending state court cases for any of the other Milchtein children. Plaintiffs argue that their claims are not moot because their controversy with the state is "capable of repetition, yet evading review[.]" *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007). "This exception applies where (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id.* (internal quotation and citation omitted). Plaintiffs argue that their situation satisfies this first prong because their claims would need to have been fully litigated before their daughters turned eighteen (i.e., no longer subject to state child and protective services proceedings). With regard to the second prong, Plaintiffs believe that there is a reasonable expectation that the State

Defendants will subject Plaintiffs to the same constitutional violations by way of Plaintiffs' remaining minor children.

The Seventh Circuit squarely addressed Plaintiffs' similar arguments in *Milchtein II*, and its directive is clear. *See* Section 3.4.2, *supra*. Plaintiffs are to address any constitutional arguments in state court, should one of their remaining minor children be a part of state proceedings. Plaintiffs argue that Wisconsin state courts are unsuitable forums to raise their constitutional arguments during ongoing MCPS proceedings. However, this Court is not the proper place to challenge the Seventh Circuit's prior decree. Therefore, this Court will dismiss Plaintiffs' claims for declaratory and injunctive relief.

6.     **CONCLUSION**

As discussed, the Court will grant Plaintiffs' motion to restrict the complaint and the documents attached thereto. (Docket #3). Based on the foregoing, the Court will also grant the State Defendants' motion to dismiss and the Hospital Defendants' motion for judgment on the pleadings. (Docket #23 and #26). Plaintiffs' claims against both the State Defendants and the Hospital Defendants will be dismissed with prejudice, and they will all be dismissed from this action.

The County Defendants' motion to dismiss will be granted in part and denied in part. (Docket #26). The counts within Claim One against the County Defendants pertaining to Plaintiffs' daughters C.M. and S.M. will be dismissed, as will the following claims that concern D.M.: Claim One, Counts Four and Eight, Claim Two, and Claim Four. However, the Court will deny the County Defendants' motion to dismiss with regard to Claim One, Counts One, Two, Three, and Six as to D.M. As discussed in Section 4.4.5 *supra*, the Court orders further briefing from the County Defendants,

with respect to those aforementioned counts, to address whether Plaintiffs have stated any viable claims for relief.

Finally, the Court will grant BGH's motion to dismiss and will dismiss BGH from this action. (Docket #42).

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion to restrict the complaint and the exhibits thereto (Docket #3) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the State Defendants' motion to dismiss (Docket #23) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' claims as to Defendants Eloise Anderson, Mary Pat Bohn, John T. Chisholm, Julia Konrardy Comey, Arlene Happach, Sarah Henery, Robin Joseph, Lori Kornblum, Crystal Reyes, Nadine Sherman, Martha Stacker, and Lori Wagnitz be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Defendants Eloise Anderson, Mary Pat Bohn, John T. Chisholm, Julia Konrardy Comey, Arlene Happach, Sarah Henery, Robin Joseph, Lori Kornblum, Crystal Reyes, Nadine Sherman, Martha Stacker, and Lori Wagnitz be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the Hospital Defendants' notice of joinder in motion to dismiss (Docket #26, #28) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiffs' claims as to Children's Hospital and Health System, Inc., Jackie Voykin Steffes, and Sara Waldschmidt be and the same are hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Defendants Children's Hospital and Health System, Inc., Jackie Voykin Steffes, and Sara Waldschmidt be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that the County Defendants' motion to dismiss (Docket #26) be and the same is hereby **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that the following claims against Milwaukee County, Milwaukee County Department of Health and Human Services, Mark Mertens, Kelly Pethke, and Sara Woitel be and the same are hereby **DISMISSED with prejudice:** Plaintiffs' claims as to C.M. and S.M.; and Claim One, Counts Four and Eight, Claim Two, and Claim Four as to D.M.;

**IT IS FURTHER ORDERED** that, with regard to Claim One, Counts One, Two, Three, and Six as to D.M., the County Defendants shall have until **November 30, 2020** to file a motion pursuant to Rule 12(b)(6) and an accompanying brief; Plaintiffs shall have until **December 14, 2020** to file a response; and the County Defendants must submit a reply on or before **December 21, 2020**;

**IT IS FURTHER ORDERED** that Defendant BGH's motion to dismiss (Docket #42) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Claim Two be and the same is hereby **DISMISSED with prejudice** as to Defendant Bella's Group Home, LLC; and

**IT IS FURTHER ORDERED** that Defendant Bella's Group Home, LLC be and the same is hereby **DIMISSED** from this action.

Dated at Milwaukee, Wisconsin, this 27th day of October, 2020.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge