UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

RABBI ALEXANDER MILCHTEIN and
ESTER RIVA MILCHTEIN,

      Plaintiffs,

v.                                                 Case No. 2:19-cv-1834

KELLY PETHKE, an individual, MARK
MERTENS, an individual, SARA WOITEL, an
individual,
      Defendants.

---

### COUNTY DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
### ON THE GROUND OF QUALIFIED IMMUNITY

---

NOW COME the Defendants, Mark Martens, Kelly Pethke, and Sara Woitel, by Deputy Corporation Counsel Anne Berleman Kearney, and state as follows in support of their motion to dismiss the remaining claims (Claim One, counts one, two, three and six) alleged against them under Federal Rule of Civil Procedure 12(b)(6) as a matter of qualified immunity, which provides defendants immunity from suit.

### INTRODUCTION

Plaintiffs Rabbi Alexander Milchtein and Ester Riva Milchtein (the "Milchteins") have brought claims against the County Defendants under 42 U.S.C. § 1983 based on allegations pertaining to their child D.M. Yet, it is not possible from those allegations to determine, what if any, legal standards have been violated by County Defendants. That defeats the claims of plaintiffs as a matter of qualified immunity, since qualified immunity exists to protect government actors

from liability where, as here, the County employees could not have determined whether their actions were or were not a violation of plaintiffs' constitutional rights.

## ARGUMENT

**A. County Defendants are Entitled to Qualified Immunity.**

County Defendants, who were acting consistent with their duties as governmental actors, should have the benefit of qualified immunity where their discretionary actions did not—as an objective matter—violate any ascertainable constitutional rights of D.M. To begin, it is important to note that the statutory elements of 42 U.S.C. § 1983 contemplate the potential for qualified immunity. As the United State Supreme Court explained in *Imbler v. Pachtman*, 424 U.S. 409 (1976), "s 1983 is to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them" and this includes qualified immunities. *Id*. at 418-19. Qualified immunities have been afforded to police officers, for instance. *Id.* at 419. Qualified immunity has been afforded to child welfare workers employed by governments. *See, e.g., Sebesta v. Davis*, 878 F.3d 226 (7th Cir. 2017). Qualified immunity should be afforded to the case manager County Defendants in this suit as well.

In its decision dated October 27, 2020, this Court waded through plaintiffs' Claim One, Counts One and Two, Three and Six to summarize allegations as to County Defendants of the following:

> **Claim One, Count One.** County Defendants violated Plaintiffs' rights to familial association, privacy, and procedural due process by removing, detaining, and continuing to detain D.M. without a protective custody warrant and failing to pursue or investigate Plaintiffs in a less intrusive manner.
>
> **Claim One, Count Two**: County Defendant Woitel violated Plaintiffs' procedural due process rights when she sought a court order for an emergency hearing at which Plaintiffs were

not able to be heard.

**Claim One, Count Three**: County Defendant Woitel violated Plaintiffs' procedural due process rights by making several false and misleading statements to the state court.

**Claim One, Count Six**: County Defendants violated Plaintiffs' First Amendment and substantive Due Process rights by disregarding their religious beliefs and preferences concerning D.M.'s religious upbringing.

*See* ECF No. 48 at 25-26. All of these counts are directed at County Defendants in their roles as case managers and officers of the Court and it is in these roles that County Defendants should be afforded qualified immunity.

Counts One, Two and Three seemingly revolve around plaintiffs' allegations of familial relations in their raising of D.M. and assertions of corresponding rights. But the contours of this "familial relations" or "raising a family" is not at all clear. Qualified immunity is afforded to municipal actors when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (internal quotation omitted).

Further, as the Seventh Circuit has explained in a number of cases, "the constitutional right to familial integrity is not absolute; rather, it must be balanced against the state's interest in protecting children from abuse." *Siliven v. Indiana Dept. of Child Servs.*, 635 F.3d 921, 928 (7th Cir. 2011); *see also Brokaw v. Mercer County*, 235 F.3d 1000, 1018-19 (7th Cir. 2000). The Court has emphasized that "[b]alancing is notoriously difficult, when (as here) the factors on each side of the balance do not lend themselves to easy measurement." *Sebesta*, 878 F.3d at 233 (alteration in original).

In *Sebesta*, the Court concluded that qualified immunity was warranted for Department of Children & Family Services employees because it could not be shown by plaintiff that "the alleged

3

conduct was unlawful in the situation [they] confronted." 878 F.3d at 235 (quotation omitted) (alteration in original). Specifically, plaintiff could not sustain the burden of "showing a case 'on point or closely analogous' that allows us to conclude that a reasonable government employee would or should know that her conduct is unlawful." *Sebesta*, 878 F.3d at 234 (quoting *Boyd v. Owen*, 481 F.3d 520, 527 (7th Cir. 2007)). The plaintiff failed to show cases that meet the "specificity criteria that the Supreme Court has established." *Id.* Here, as was the situation with the child welfare workers in *Sebesta*, there was not legal precedent that would have "alerted a reasonable official [County Defendants] to the possibility that [their] conduct in the situation [they] confronted was unlawful." *Id.* (alteration added).

This specificity criteria is crucial to a determination of what governmental officials need to know for purposes of qualified immunity: "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). This is "so that the 'contours' of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (quoting *Anderson*, 483 U.S. at 640). To be clearly established, a right must be "one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks omitted). In this case, the level of generality used by the plaintiffs in describing the wrongs sought to be righted are ones of extreme generality, and County Defendants could not have been on notice that they were committing constitutional wrongs where the courts have not spelled out what constitutes constitutional wrongs in this area of familiar relations along with the asserted accompanying substantive due process violations. The Court has rejected a generalized formulation: "We have repeatedly told courts . . . not to define clearly established law at a high level of generality." *Id.* at 12 (citation omitted). "The dispositive

question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12  (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

Plaintiffs cannot show that County Defendants' "particular conduct" has been "clearly established" to be "violative [in] nature." *Id*.  To be sure, there need not be a prior case exactly on point. *al-Kidd*, 563 U.S. at 741. However, "'existing precedent [must have] placed the statutory or constitutional question beyond debate.'" *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015) (quoting *al-Kidd*, 563 U.S. at 741).  There is no existing precedent to put the constitutional question beyond debate.

As to the familial rights that plaintiffs claim, in *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), the case to which plaintiffs cite in their complaint (ECF No. 1 at 52), the Supreme Court observes that it "has not attempted to define with exactness the liberty thus guaranteed [by the Fourteenth Amendment]. . . [w]ithout doubt, it denotes… the right of the individual to . . . establish a home and bring up children."  This general statement from the Court does not establish what conduct as violative as being "beyond debate."

Nor can *Crowley v. McKinney*, 400 F.3d 965, 968 (7th Cir. 2005), another case cited in the complaint, be relied upon by plaintiffs to sustain their burden of providing precedent that County Defendants' conduct was "clearly established" as violating plaintiffs' rights.  This case, *Crowley*, speaks only generally to the constitutional rights of parents in educating their children in the context of the situation of a non-custodial divorced parent who sought a detailed level of participation in his children's education as a constitutional right, which right was not recognized by the court.  *See* 400 F.3d at 968-71.  Indeed, the scope and level of detail of the constitutional claim made by the father in *Crowley* would seem to be consistent with the scope and level of detail asserted by plaintiffs as set out in their 100-page complaint, and the court's rejection of the claim

in *Crowley* would seem to show just how difficult it would be to determine the legal contours of a right that was being violated. Thus, *Crowley* would support application of qualified immunity to County Defendants' actions.

With respect to the claim of religious rights in Count One, Claim VI, plaintiffs again set forth a general statement from *Wisconsin v. Yoder*, 406 U.S. 205, 213-15 (1972), a case which discusses the balancing to be undertaken with the State's compulsory need to educate and one's religious rights. There is no precedent-setting rule in that case that would discuss particular conduct on the part of County Defendants that supposedly (as plaintiffs assert) "disregard[ed] plaintiffs religious views" and allegedly then followed others' views, which could constitute a constitutional violation. Plaintiffs, too, make reference to *Troxell v. Granville*, 530 U.S. 57, 66 (2000) in their complaint with its statement that there is a "fundamental right of parents to make decisions concerning the care, custody, and control of their children." But from this statement the Court in *Troxell* continues on to discuss the limitations to that right when, for instance, unfit parents are involved. *Id.* at 68-69. Again, then, the statement of a general right in *Troxell* does not act as the precedent needed to tell a reasonable officer (or worker) when particular conduct is violative of a "clearly established" right. In plaintiffs' case, for instance, there were concerns about plaintiffs' fitness in their treatment of D.M. and thus *Troxell* would seem to permit the County's "inject[ing] itself into the private realm of the family." 530 U.S. at 68-69. Finally, to the extent that plaintiffs challenge the constitutionality of Wis. Stat. § 48.57(1)(d), which they call the "Religious Directive," such a challenge is misplaced in this suit as against County Defendants where that is more properly raised with the State of Wisconsin being involved.

At bottom, plaintiffs' allegations appear to be about claimed precipitous action on the part of County Defendants with regard to D.M., even while also recognizing in their pleading that the

6

Case 2:19-cv-01834-JPS   Filed 11/30/20   Page 6 of 9   Document 50

issues of which they complain with regard to County Defendants were ones brought before state judicial officers for their consideration. There are numerous allegations in plaintiffs' complaint, for instance, making clear that judicial officers were involved in determining "probable cause," "the need protect to prevent self-harm," and why it was contrary to the welfare of D.M. to return to plaintiffs' home. This makes plaintiffs' arguments of constitutional violations in Claim One Counts Two and Three, supposedly connected to misleading statements, hard to reconcile given the court review. (ECF No. 1 at ¶¶ 5, 162, 167-168, 173). Further, there are plaintiffs' allegations complaining of medical releases signed by County Defendants and protection, which also were given in reliance on judicial officers' decisions. (ECF No. 1 at *id.* and ¶¶ 36-38). This, too, makes County Defendants' particular conduct legally supported. The fact that judicial officers were involved and considered these issues in conjunction with the actions of County Defendants underscores that County Defendants could not have known that their conduct was violative of plaintiffs' rights.

At best, in looking at the complained-of issues, plaintiffs can point to some sort of balancing that is required of case workers or welfare workers—family togetherness versus rights of protection to be afforded by the government—that supposedly should have been done differently. *See, e.g., Brokaw*, 235 F.3d 1000. Inherent in any sort of balancing, however, is the prospect that different factual circumstances will make for different determinations that cannot be made on the basis of bright-line rules. As the Seventh Circuit explained in *Sebesta*, "[c]hild welfare caseworkers are often called upon to make difficult decisions without the benefit of extended deliberation." 878 F.3d at 235 (citation omitted). There can be no doubt that this balancing presents serious challenges for any worker in the area of child welfare to ascertain the legal contours that might apply to their actions—including County Defendants. The balancing

7
Case 2:19-cv-01834-JPS   Filed 11/30/20   Page 7 of 9   Document 50

challenges faced by workers such as County Defendant are far from the situation of "the plainly incompetent or those who knowingly violate the law" who are not afforded qualified immunity. *White v. Pauly*, -- U.S. --, 137 S. Ct. 548, 551 (2017) (citation omitted). Rather, for the County Defendants, "the right's contours were [not] sufficiently definite that *any* reasonable official in [his] shoes would have understood that he was violating it.'" *Sheehan*, 135 S. Ct. at 1774 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014)) (emphasis added).

Qualified immunity affords immunity from suit—to ensure that County Defendants do not have to face the burdens of litigation, including discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671-72 (2009); *see also Imbler*, 424 U.S. at 431. County Defendants should have these protections arising from qualified immunity where the decisions of care that they made were balanced ones; made on knowledge of the specific facts before them; with no particularized notice that the conduct was prohibited; and no precedent that would have categorized their conduct beyond debate as a constitutional violation. The Milchteins' claim and counts against the County Defendants should be dismissed on grounds of qualified immunity.

## CONCLUSION

For all of these reasons, the County Defendants, Mark Martens, Kelly Pethke and Sara Woitel respectfully request that plaintiffs' remaining claims (Claim One, Counts One, Two, Three, and Six) against them be dismissed with prejudice.

Dated at Milwaukee, Wisconsin this 30th day of November, 2020.

                                                MARGARET C. DAUN
                                                Milwaukee County Corporation Counsel

                              By:    s/ Anne Berleman Kearney
                                         ANNE BERLEMAN KEARNEY
                                         Deputy Corporation Counsel
                                         State Bar No. 1031085

Attorney for Defendants Mark Martens, Kelly Pethke, and Sara Woitel

<u>P.O. Mailing Address:</u>
Milwaukee County Office of Corporation Counsel
901 North Ninth Street, Room 303
Milwaukee, WI 53233
Telephone: (414) 278-4432
Facsimile: (414) 223-1249
Email: anne.kearney@milwaukeecountywi.gov